**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br><i>Plaintiff-Appellee</i>,<br><br>v.<br><br>DERRICK PATTERSON, AKA 11 inches Hung, AKA 11-inches, AKA 11in,<br><br><i>Defendant-Appellant</i>.</td><td>No.22-50287<br><br>D.C. No. 2:22-cr-00155-JFW-1<br><br><br>OPINION</td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted June 11, 2024
Pasadena, California

Filed October 1, 2024

Before: A. Wallace Tashima, Morgan Christen, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Tashima;
Concurrence by Judge Christen

# SUMMARY[*]

## Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which the district court imposed on Derrick Patterson, who pleaded guilty to Hobbs Act robbery and identity theft, a sentencing enhancement under U.S.S.G. § 3A1.1 for a hate crime motivation.

Patterson met the victim of the offense through Grindr, a dating application. During the encounter, Patterson took the victim's phone and used it to withdraw money from the victim's bank accounts.

The panel agreed with Patterson that the language of the enhancement, requiring a finding beyond a reasonable doubt that the defendant intentionally selected the victim "because of" one of the protected grounds, is ambiguous. The panel held, however, that even though the word "motivation" is not in the guideline, the guideline's title ("Hate Crime Motivation"), history, and purpose all support the conclusion that application of the enhancement requires a finding that the defendant was motivated by hate. Because the district court imposed the enhancement without finding beyond a reasonable doubt that Patterson was motivated by hate or animus, the panel vacated and remanded for resentencing.

Judge Christen concurred in the majority's decision to vacate and remand for resentencing, but arrived there by a different path. In her view, the enhancement is

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

unambiguous. She wrote that by requiring a finding that the defendant selected the victim "because of" the victim's actual or perceived membership in a protected class, the enhancement bakes in the requirement that the protected characteristic at issue—*e.g.*, sexual orientation—was the defendant's motivation for selecting the victim.

## COUNSEL

Bram M. Alden (argued), Assistant United States Attorney, Chief, Criminal Appeals Section; Jeremiah Levine and David R. Friedman, Assistant United States Attorneys; E. Martin Estrada, United States Attorney; United States Department of Justice, Office of the United States Attorney, Los Angeles, California; for Plaintiff-Appellee.

Laura Schaefer (argued) and Hunter Haney, Deputy Federal Public Defenders; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant.

## OPINION

TASHIMA, Circuit Judge:

The question we address is whether the sentencing enhancement for a hate crime motivation, found in U.S. Sentencing Guidelines Manual (USSG) § 3A1.1(a), requires a finding that the defendant was motivated by hate or animus. We conclude that such a finding is required. Because the district court imposed the enhancement without finding beyond a reasonable doubt that the defendant was

motivated by hate or animus, we vacate the sentence and remand for resentencing.

## BACKGROUND

Derrick Patterson entered a guilty plea to one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951 and one count of identity theft in violation of 18 U.S.C. § 1028A(a)(1). Patterson met the victim of the offense through Grindr, a dating application. During the encounter, Patterson took the victim's phone and used it to withdraw money from the victim's bank accounts.

At sentencing, the district court imposed a three-level increase for hate crime motivation, rejecting Patterson's argument that USSG § 3A1.1(a) required that the defendant be motivated by hate. The district court sentenced Patterson to a term of 111 months. Patterson timely appealed.

## STANDARD OF REVIEW

"We review de novo the district court's legal interpretation of the Guidelines." *United States v. Scheu*, 83 F.4th 1124, 1126 (9th Cir. 2023). Whether the imposition of the hate crime enhancement under § 3A1.1(a) requires a finding of a motivation of hate is a legal question reviewed de novo. *See United States v. Herrera*, 974 F.3d 1040, 1047 (9th Cir. 2020) ("Whether the definition of 'victim' under § 2B1.1 includes a state government agency is a question of first impression in this circuit that we review de novo."); *United States v. Flores*, 729 F.3d 910, 913–14 (9th Cir. 2013) (where "[t]he facts regarding the characteristics of the weapons involved are undisputed," and "the only questions on appeal" were "the definition of a missile under § 2K2.1(b)(3)(A) and whether the 40–mm cartridges meet that definition," reviewing those questions of law de novo).

**DISCUSSION**

Section 3A1.1 is entitled "Hate Crime Motivation or Vulnerable Victim."

The enhancement provides:

> If the finder of fact at trial or, in the case of a plea of guilty or nolo contendere, the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person, increase by 3 levels.

USSG § 3A1.1(a).

"We apply 'the traditional rules of statutory construction when interpreting the sentencing guidelines.'" *Scheu*, 83 F.4th at 1128 (quoting *Flores*, 729 F.3d at 914 n.2). Those "standard tools of interpretation" include the guideline's "text, structure, history, and purpose." *Rubalcaba v. Garland*, 998 F.3d 1031, 1037–38 (9th Cir. 2021) (quoting *Kisor v. Wilkie*, 588 U.S. 558, 573, 575 (2019)). If the guideline is ambiguous after the "court has exhausted all the 'traditional tools of construction,'" the court defers to the guideline commentary and application notes. *Scheu*, 83 F.4th at 1127 (quoting *Kisor*, 588 U.S. at 575). In addition, "we look at the structure of the guidelines as a whole to understand the provision in context. For further understanding we may also consider the provision's history,

purpose, and the reasons for any relevant amendments."
*Herrera*, 974 F.3d at 1047 (internal citations omitted).

The enhancement is applicable if the court finds beyond
a reasonable doubt that Patterson intentionally selected his
victim "because of" the victim's "actual or perceived race,
color, religion, national origin, ethnicity, gender, gender
identity, disability, or sexual orientation." U.S.S.G.
§ 3A1.1(a). The district court concluded that Patterson
targeted his victim because of the victim's sexual
orientation.

Patterson contends that the language of the enhancement,
requiring a finding beyond a reasonable doubt that the
defendant intentionally selected the victim "because of" one
of the protected grounds, is ambiguous. He argues that the
phrase, because of, could mean, for example, that the
protected characteristic is the "but for" cause of the selection
of the victim or that it was the primary impetus for the
selection. The government contends that the guideline is
unambiguous and that we accordingly do not need to
consider the guideline commentary and application notes.
We agree with Patterson, however, that the guideline is
ambiguous.

The district court reasoned that, although the
enhancement is entitled, "Hate Crime Motivation," the
guideline itself does not require a motivation of hate. We
disagree. Even though the word "motivation" is not in the
guideline, the title, history, and purpose of the guideline all
support the conclusion that application of the enhancement
requires a finding that the defendant was motivated by hate.

First, the title of the enhancement, "Hate Crime
Motivation," establishes that it applies to a defendant whose
offense was motivated by hate or animus. Although "[a] title

will not, of course, 'override the plain words' of a statute," the Supreme Court "has long considered that '"the title of a statute and the heading of a section" are "tools available for the resolution of a doubt" about the meaning of a statute.'" *Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (first quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 536–37 (2021); then quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)).

*Dubin* illustrates how even a common phrase such as "because of" can be ambiguous and require reliance on statutory context and history to interpret a statute. In *Dubin*, the defendant submitted a claim for reimbursement to Medicaid that overstated the qualifications of the person who performed psychological testing of a patient, thus inflating the amount of reimbursement. *Id.* at 174. The defendant was charged with healthcare fraud, but the government also charged the defendant with aggravated identity theft, 18 U.S.C. § 1028A(a)(1), on the ground that the fraudulent billing included the patient's Medicaid number. *Id.* at 114–15. "Section 1028A(a)(1) applies when a defendant, 'during and in relation to any [predicate offense], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.'" *Id.* at 115. The government argued that "[a] defendant uses a means of identification 'in relation to' a predicate offense if the use of that means of identification 'facilitates or furthers' the predicate offense in some way." *Id.* at 117. The Supreme Court, however, rejected this interpretation because it read "the terms broadly and in isolation." *Id.*

The Court began by addressing the meaning of the terms "uses" and "in relation to," reasoning that both terms had different meanings depending on their context. *Id.* at 118–19. For example, "[i]f '"relate to" were taken to extend to

the furthest stretch of its indeterminacy, then for all practical purposes' there would be no limits, as "'[r]eally, universally, relations stop nowhere.'"" *Id.* at 119 (quoting *N. Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). The Court explained that "a statute's meaning does not always turn solely on the broadest imaginable definitions of its component words." *Id.* at 120 (quoting *Epic Sys. Corp. v. Lewis*, 584 U. S. 497, 523 (2018)). Instead, "[s]ection 1028A(a)(1)'s title and terms both point[ed] to a narrower reading, one centered around the ordinary understanding of identity theft." *Id.* The Court reasoned that the title "aggravated identity theft" rather than "pithily summarizing a list of 'complicated and prolific' provisions," indicated that the statute focused on identity theft. *Id.* at 121 (quoting *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528 (1947)). The government acknowledged that its interpretation of the statute "d[id] not fairly capture the ordinary meaning of identity theft," and the Court agreed, reasoning that "'identity theft' has a focused meaning." *Id.* at 122.

As in *Dubin*, the title, Hate Crime Motivation, has a focused meaning based on the ordinary understanding of a hate crime – that the defendant is motivated by hate or animus for the victim because of one of the protected characteristics. The guideline's history clearly sets forth the requirement that the enhancement applies when the defendant is motivated by hate or animus based on one of the protected characteristics.

The background commentary explains that the hate crime enhancement was added to the guidelines in response to a "directive to the Commission, contained in section 280003 of the Violent Crime Control and Law Enforcement Act of 1994, to provide an enhancement of not less than three

levels for an offense when the finder of fact at trial determines beyond a reasonable doubt that the defendant had a hate crime motivation." USSG § 3A1.1 cmt. background. *See United States v. Armstrong*, 620 F.3d 1172, 1176 (9th Cir. 2010) (stating that "[t]he purpose of [§ 3A1.1(a)] is to punish those who have a hate crime motivation and to deter future hate crimes"); *cf.* Zachary J. Wolfe, Hate Crimes Law § 2:21 (Dec. 2023) (Hate Crimes Law) (describing legislative history of § 3A1.1(a) as stating that "the selection of a victim . . . must result from the defendant's *hate* or *animus* toward any person for bearing one or more of the characteristics set forth in the definition of 'hate crime'" (quoting H.R. Rep. No. 103-244, at 5, 103rd Cong., 1st Sess. 1993, 1993 WL 374132, legislative history to the Hate Crimes Sentencing Enhancement Act)).

An amendment effective on November 1, 2010, supports the conclusion that application of the enhancement requires a finding that the defendant was motivated by hate. The amendment was a response "to the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act (division E of Pub. L. 111-84)," which "created two new offenses and amended a 1994 directive to the [Sentencing] Commission regarding crimes *motivated by* hate." USSG app. C, Amend. 743 (emphasis added). The new act broadened the definition of "hate crime" and thus "amend[ed] § 3A1.1 so that the enhancement in subsection (a) covers crimes motivated by actual or perceived 'gender identity.'" *Id.*

This interpretation of the hate crime enhancement is illustrated by the district court's decision not to impose the enhancement in *United States v. Boylan*, 5 F. Supp. 2d 274 (D.N.J. 1998). The defendant in *Boylan* was a former municipal court judge who "coached female defendants charged with traffic violations to lie in open court about the

circumstances of their offenses, based reductions of their traffic fines and penalties on the false statements he procured, and, in turn, solicited sexual favors from" them. *Id.* at 276. The district court reasoned that, although the defendant generally chose "single, poor, Hispanic or light-skinned black females," he was not motivated by hatred but instead "chose victims based on his perception of their economic status." *Id.* at 283. The district court thus declined to apply the hate crime enhancement because it did "not appear beyond a reasonable doubt that the primary motivation for the offense was a hatred" for the victims. *Id.* Finding that the defendant "consciously chose his victims based on their unusual vulnerability," the court applied the vulnerable victim enhancement in § 3A1.1(b) instead of the hate crime enhancement. *Id.* at 284.

As *Boylan* illustrates, the fact that the victims are from a protected group does not necessarily mean the defendant was motivated by animus toward that group. Instead, the enhancement applies if the trier of fact finds beyond a reasonable doubt that the defendant was motivated by hate or animus against a protected group in choosing the victim.

This interpretation of the phrase, "because of," in § 3A1.1(a) is consistent with its interpretation in similar statutes. For example, in *United States v. Nelson*, 277 F.3d 164 (2d Cir. 2002), the Second Circuit addressed 18 U.S.C. § 245(b)(2), which prohibits interfering with someone's federally protected activity "because of his race, color, religion or national origin." The court construed this language to mean the defendant was "*motivated* by racial or religious, etc., hatred," or held "an animus against the victim on account of her race, religion, etc., that is, her membership in the categories the statute protects." *Id.* at 188, 189; *see also United States v. McGee*, 173 F.3d 952, 957 (6th Cir.

1999) (reasoning that 18 U.S.C. § 245 "provides that so long as racial animus is a substantial reason for a defendant's conduct, other motivations are not factors to be considered"); *United States v. Makowski*, 120 F.3d 1078, 1081 (9th Cir. 1997) (rejecting the argument that 18 U.S.C. § 245(b)(2) is void for vagueness because "[p]ersons of 'common intelligence' would comprehend that the statute prohibits the assault of an individual where the violence is motivated by racial animus and prevents the victim from enjoying a federally protected right"); *cf. United States v. McInnis*, 976 F.2d 1226, 1232 (9th Cir. 1992) (stating that racial hatred was an element of 42 U.S.C. § 3631, which prohibits the use of force to interfere with housing rights "because of" the person's "color, religion, sex, handicap . . . , familial status . . . , or national origin," in violation of 42 U.S.C. § 3631). These cases support the conclusion that § 3A1.1(a)'s requirement of a finding beyond a reasonable doubt that the defendant chose the victim "because of" a protected characteristic should be construed as requiring animus.

We agree with the Second Circuit's reasoning in explaining the racial animus requirement of 18 U.S.C. § 245(b)(2)(B) and find it applicable here. The court stated that "[n]ot all attacks 'because' a victim is black are . . . racially motivated in the relevant sense." *Nelson*, 277 F.3d at 188 n.21. "Thus a racially indifferent attacker (one who gets his kicks from assaulting victims regardless of race) might nonetheless pursue exclusively black victims in the belief that the police will be less likely to seek out or prosecute those who commit violent acts against blacks." *Id.* Similarly here, the hate crime enhancement does not apply where a defendant chooses victims in a protected group for reasons other than a hate motive. *Cf. United States v.*

*Robinson*, 119 F.3d 1205, 1219 (5th Cir. 1997) (holding that vulnerable victim enhancement of § 3A1.1(b) was not applicable because the victims, Asian business owners who kept large amounts of cash at their business establishments, were not particularly vulnerable, stating that "a vulnerable victim enhancement must stem from a personal trait or condition of the victim, rather than the position he occupies or his method of doing business," and that "the victims' stores were targeted because that is where the money was"); Hate Crimes Law § 2:21 (explaining that the hate crime enhancement does not apply "where the defendant targets a member of a protected group not because he 'hates' the group but because he uses the victim's group membership as a 'proxy' for other information about the victim").

Patterson used the dating platform Grindr to find people who would be willing to meet him alone so that he could rob them. That is, their membership in the protected group was a proxy for other information about them – their willingness to agree to meetings where he knew they would be alone. This is insufficient to impose the hate crime enhancement without finding beyond a reasonable doubt that Patterson was motivated by hatred or animus of the victims because of their membership in the protected group.

The district court imposed the hate crime enhancement over Patterson's objections, reasoning that § 3A1.1(a) did not "require that the defendant be motivated by hate." The district court relied on a statement in *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008), in which the defendants appealed their convictions and sentences arising from their involvement in the bombings of American embassies in Africa. One defendant challenged the application of three sentencing enhancements: the hate crime enhancement, the government

victim enhancement, U.S.S.G. § 3A1.2(a), and the terrorism enhancement, U.S.S.G. § 3A1.4(a), to his sentence. *Id.* at 151–52. As pertinent here, he challenged the application of the hate crime enhancement "on the grounds that (1) 'political beliefs,' not hatred, motivated his actions, and (2) the victims of the conspiracy were targeted for their U.S. citizenship, not their national origin." *Id.* at 153 (emhasis and internal citations deleted).

The Second Circuit rejected the defendant's distinction "between political activism and hate as the basis for the selection of his victims." *Id.* The court reasoned that, even if a court could "classify some motives as essentially 'political' and others as rooted in 'hatred,'" that classification would not be relevant to the application of the hate crime enhancement. *Id.* at 154. The court concluded with the statement relied on here by the government and district court, stating that "the underlying motivation is simply beside the point." *Id.* However, in *Terrorist Bombings*, there was no question that the defendants targeted Americans when they chose to bomb the United States embassies. In that context, distinguishing between purely political and purely hate motives was not only extremely difficult, but irrelevant to the application of the enhancement. We do not read the rationale in *Terrorist Bombings* as controlling here.

## CONCLUSION

The title, history, purpose, and ordinary understanding of the term "hate crime" all indicate that application of the enhancement requires the trier of fact to find beyond a reasonable doubt that the defendant acted with animus. We vacate the sentence and remand for resentencing.

**VACATED and REMANDED.**

CHRISTEN, Circuit Judge, concurring:

I reach the same conclusion as the majority, but I arrive there by a different path.  In my view, the hate crime motivation enhancement is unambiguous.  It requires a determination that the defendant, having decided to commit a criminal act, "intentionally selected" the victim of the offense "*because of* the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person."  U.S.S.G. § 3A1.1(a) (emphasis added).  By requiring a finding that the defendant selected the victim "because of" the victim's actual or perceived membership in a protected class, the enhancement bakes in the requirement that the protected characteristic at issue—*e.g.*, sexual orientation—was the defendant's motivation for selecting the victim.  In my view, nothing more is required to establish the requisite animus needed to impose the hate crime motivation enhancement.

In 1994, Congress directed the Sentencing Commission to promulgate a sentencing enhancement for offenses that are hate crimes.  Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 280003(b), 108 Stat. 1796, 2096.  Congress defined a "hate crime" as one in which "the defendant intentionally selects a victim . . . because of the actual or perceived race, color, religion, national origin, ethnicity, gender, disability, or sexual orientation of any person."  *Id.* § 280003(a).  In response, the Sentencing Commission adopted § 3A1.1.  *See* U.S.S.G. § 3A1.1 cmt. background.  As we have explained, the purpose of the enhancement is to "punish those who have a hate crime motivation."  *United States v. Armstrong*, 620 F.3d 1172, 1176 (9th Cir. 2010).  Both the statutory directive and the enhancement itself unambiguously require the

district court to find that the defendant selected the victim *because of* the victim's protected characteristic. Based on the plain language of the enhancement, it is not sufficient for the characteristic at issue to serve as a proxy for some other motivation that the defendant may have correlated with the protected class, such as vulnerability.

This interpretation of § 3A1.1 is consistent with *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93 (2d Cir. 2008). There, one of the defendants convicted of bombing United States embassies challenged the application of the hate crime motivation enhancement on the ground that he selected victims based on his political beliefs, rather than hatred of Americans. *Id.* at 153-54. The court rejected this argument, explaining, "the enhancement does not turn on evaluation of the considerations that motivated a defendant's decision to target victims based on their race, color, religion, or other enumerated characteristic." *Id.* at 154. In other words, it was enough that the defendant targeted his victims because they were Americans. Whether the defendant's reason for selecting Americans as his target was political activism or blind hatred of Americans, the hate crime motivation enhancement was properly applied where the defendant selected his victims *because of* their status as U.S. nationals—not because of some other attribute for which U.S. national origin served as a convenient proxy.

Another example illustrates why I agree with the majority that the enhancement was not properly imposed in Patterson's case. Imagine a record that establishes that a woman decided to commit theft offenses by responding to provocative ads and inviting men into her home where she would have access to their wallets. Without more, it is not possible to conclude that this hypothetical woman bore

animus toward her victims on account of their gender. All that can be concluded is that she was motivated to commit theft offenses and that her victims happened to be men as a consequence of the particular modus operandi she employed. The same is true in Patterson's case: because he used Grindr to lure his victims, Patterson's victims were gay men. But nothing indicates that it was his victims' sexual orientation that motivated Patterson to steal from them.

Here, the district court applied the hate crime motivation enhancement based on its understanding that Patterson's modus operandi warranted it. The court reasoned that Patterson "actively targeted gay men because [he] exploited his victims' sexual interest in him and his familiarity with gay culture to make his robberies easier and more successful." The court also stated that Patterson believed "gay men shared characteristics that made them susceptible and vulnerable robbery targets." These findings suggest that Patterson's purposeful exploitation of gay men may have qualified for the vulnerable victim enhancement, U.S.S.G. § 3A1.1(b), because Patterson recognized that, straight or gay, a sexual partner lured into his home would be vulnerable to his theft offenses. But it does not qualify for the hate crime motivation enhancement.

In short, application of the enhancement requires a finding that a protected characteristic—here, sexual orientation—was a motivation for the defendant's selection of victims. This requirement is satisfied where a court finds the defendant selected a victim "because of" a protected characteristic. The district court did not make such a finding, and in my view the record would not support one.

For these reasons, I concur in the majority's decision to vacate and remand for resentencing.