# United States Court of Appeals
## For the First Circuit

No. 01-1216

UNITED STATES OF AMERICA,

Appellee,

v.

PAUL R. WHOOTEN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Circuit Judge,

Stahl, Senior Circuit Judge,

and O'Toole, Jr.,* District Judge.

Miriam Conrad, Federal Defender Office, for appellant.
Paula J. DeGiacomo, Assistant U.S. Attorney, with whom James
B. Farmer, United States Attorney, were on brief, for appellee.

February 5, 2002

---

* Of the District of Massachusetts, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>. Defendant-appellant Paul R. Whooten pled guilty to two counts of unarmed bank robbery and three counts of interference with commerce by bank robbery. He was sentenced to 140 months' imprisonment, based on an offense level that the district court adjusted upward after finding that an abduction had occurred during the commission of the crime. Defendant appeals his sentence, claiming that it violates <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000), and that the abduction enhancement was inapplicable to the facts of his case. Because we find no error in the district court's sentence, we affirm.

**I.**

On August 1, 1999, Paul Whooten and James Travis robbed a Bread & Circus store in Wayland, Massachusetts. After forcing the store clerks to turn over more than $10,000 in cash, Whooten placed the money into a paper bag. Then, putting a hand on the gun located in his waistband,[1] he said to one of the store clerks, Marie Mee, "We're gonna go outside now and you're coming with me." Whooten threatened to kill her if she did not cooperate.

Whooten and Travis exited the store, with Whooten walking behind Mee. Whooten directed Travis to run and start the car. Meanwhile, Whooten continued to walk behind Mee until they were approximately 65 feet east of the store entrance. He then instructed Mee to turn around and walk back to the store. Whooten

---

[1] The gun was later determined to be a toy gun.

ran to the car, which was parked about 153 feet east of the store entrance, and drove off with Travis.

On August 2, 2000, appellant pled guilty to a five-count information, charging two counts of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a), and three counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a).[2] Under the rules for sentencing on multiple counts, as set forth in U.S.S.G. § 3D1.4, the district court calculated the total offense level by determining the count carrying the highest adjusted offense level, then adding points for the other counts.

In this case, the Presentence Report ("PSR") determined that Count Three, which charged "interference with commerce by robbery" at the Wayland Bread & Circus store, had the highest adjusted offense level of 28. The robbery carried a base offense level of 20, which was increased by three levels for the display of a dangerous weapon during the commission of the crime and by one level because Whooten stole between $10,000 and $50,000. See U.S.S.G. §§ 2B3.1(b)(2)(E), 2B3.1(b)(7). In addition, the PSR increased the offense level by four steps, pursuant to § 2B3.1(b)(4)(A), because Whooten abducted an individual to "facilitate commission of the offense or to facilitate escape." To this adjusted offense level of 28, the PSR added four levels for the other counts, pursuant to § 3D1.4, and then subtracted three levels for early acceptance of responsibility, resulting in a total

---

[2]  Four of the counts relate to separate robbery incidents, the details of which are unnecessary to this appeal.

offense level of 29. With Whooten's criminal history category of V, this offense level produced a sentence range of 140 to 175 months' imprisonment.

Defendant objected to the four-level abduction enhancement, claiming that it violated Apprendi v. New Jersey and that it was not supported by the facts. The district court overruled Whooten's objections and sentenced him to 140 months' imprisonment. On appeal, defendant renews the objections that he raised below.

**II.**

Whooten claims that Apprendi v. New Jersey bars the four-level abduction enhancement because the facts supporting the enhancement were neither alleged in the information nor proved beyond a reasonable doubt. Apprendi, however, is inapplicable to this case.

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Thus, Apprendi only applies when a defendant's sentence exceeds the statutory maximum. See id.; United States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001). Apprendi does not prevent a sentencing judge from making factual findings that increase a defendant's sentence, as long as such an increase falls within the statutory maximum. See Caba, 241 F.3d at 101.

-4-

In this case, the statutory maximum for each count to which defendant pled guilty was twenty years' imprisonment. See 18 U.S.C. §§ 1951(a) (authorizing a term of not more than twenty years), 2113(a) (same). Therefore, defendant's sentence of 140 months does not exceed the statutory maximum, and Apprendi is inapplicable. The district court acted within its discretion in determining that an abduction occurred for purposes of enhancing defendant's sentence.

## III.

Defendant argues that even if the abduction enhancement is permissible under Apprendi, the facts found by the district court in this case are insufficient to trigger application of the sentencing guidelines' abduction enhancement. Although we review the district court's factual findings for clear error, we review de novo a district court's interpretation of a sentencing guideline. See United States v. LaFortune, 192 F.3d 157, 160 (1st Cir. 1999).

The sentencing guidelines provide for a four-level increase in the offense level "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(A). The background note to § 2B3.1 indicates that "[t]he guideline provides an enhancement for robberies where a victim was forced to accompany the defendant to another location. . . ." U.S.S.G. § 2B3.1, comment. (backg'd.). Section 2B3.1 also references definitions of general application in § 1B1.1. See U.S.S.G. § 2B3.1, comment. (n.1). Section 1B1.1 states: "'Abducted' means that a victim was forced to accompany an

-5-

offender to a different location.  For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction."  U.S.S.G. § 1B1.1, comment. (n.1(a)).

Defendant argues that, as a matter of law, forcing Mee to walk 65 feet from the store's entrance does not amount to forcing the victim "to a different location," and is dissimilar from the commentary's example of forcing a bank teller into a getaway car. Because Whooten released Mee when he was still 90 feet from the getaway car, he claims that her presence did not facilitate the commission of the offense or the defendant's escape.  As a result, Whooten contends that his acts do not qualify as an abduction under the guidelines.  We disagree.

The facts, which defendant does not dispute, indicate that Whooten forced Mee, at gunpoint and while threatening to kill her, outside of the store and 65 feet into the parking lot.  We have no difficulty finding that this was a forced movement "to a different location."  See United States v. Hickman, 151 F.3d 446, 462 (5th Cir. 1998) (noting that "[t]he term 'a different location' must be interpreted on a case by case basis, considering the particular facts under scrutiny, not mechanically, based on the presence or absence of doorways, lot lines, thresholds, and the like"), reh'g granted and opinion vacated, 165 F.3d 1020 (1999), aff'd by an equally divided court, 179 F.3d 230 (1999) (per curiam); United States v. Taylor, 128 F.3d 1105 (7th Cir. 1997) (affirming abduction enhancement where defendant forced bank employee at gunpoint to go from parking lot into bank); United

-6-

States v. Davis, 48 F.3d 277 (7th Cir. 1995) (same); United States v. Hawkins, 87 F.3d 722 (5th Cir. 1996) (per curiam) (affirming abduction enhancement where defendants forced victims to move about 40 to 60 feet in a parking area towards a van, because "a different location" is a "flexible" term); United States v. Nale, 101 F.3d 1000 (4th Cir. 1996) (affirming enhancement on grounds that "even a temporary abduction can constitute an abduction" under sentencing guidelines); United States v. Elkins, 16 F.3d 952 (8th Cir. 1994) (affirming abduction enhancement where defendant forced bank patron, at knife-point, out of bank and into parking lot).

Moreover, such abduction, even if terminated before defendant reached the getaway car, nonetheless facilitated his escape within the meaning of § 2B3.1(b)(4)(A). By forcing Mee to walk in front of him as he exited the store, Whooten shielded himself from detection, as well as provided himself with a potential hostage until Travis had sufficient time to start the car. See Nale, 101 F.3d at 1003 (finding temporary abduction facilitated offense because it delayed police notification and allowed defendant to make a speedier escape).

This Court has observed that the abduction enhancement is intended, at least in part, to protect victims against additional harm that may result from the victim's isolation, and thus applies whether the abduction is carried out by threat or by physical force. See United States v. Cunningham, 201 F.3d 20, 28 (1st Cir. 2000). Regardless of whether Mee was forced at gunpoint to walk 65 feet towards the getaway car, or the entire 153 feet to reach the

car, Mee faced "the same dangerous consequences" of isolation.  Id. at 28 (noting that isolation increases likelihood that victim will be harmed).  Because Whooten unquestionably placed Mee at risk of harm, which the abduction enhancement is designed to deter, we are even more convinced that application of the abduction enhancement is appropriate in this case.

## IV.

Because we find that the facts support application of the abduction enhancement and that defendant's sentence does not violate Apprendi, we **affirm.**