**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0246n.06
Filed: April 1, 2005

**No. 04-1194**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOHN LYNN KAVO, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BATCHELDER and DAUGHTREY, Circuit Judges, and O'KELLEY,[*] District Judge.

MARTHA CRAIG DAUGHTREY, Circuit Judge. The defendant, John Lynn Kavo, pleaded guilty to one count of aggravated sexual abuse by force, a crime that occurred "in Indian Country, on land held in trust by the United States for the use of the Bay Mills Indian Community." After a hearing, the district court sentenced Kavo to 121 months in prison, to be followed by three years on supervised release. On appeal, the defendant reasserts his objection to the sentencing decision to increase his base offense level for abducting the victim of the crime. Although we conclude that the district court did not err in finding that the facts on which the guilty plea was based were legally sufficient to support the

_____

[*]The Hon. William C. O'Kelley, United States District Judge for the Northern District of Georgia, sitting by designation.

conclusion that the victim had been abducted, we further conclude that the case must be remanded for re-sentencing in the wake of the Supreme Court's recent opinion in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Sixth Circuit cases applying *Booker*, including *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), and *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005).

## **FACTUAL AND PROCEDURAL BACKGROUND**

After spending the evening at a local casino with the parents of the victim in this case (identified as "I.B." in the indictment), the defendant was invited to come to their home "for drinks." I.B., described as the defendant's "former girlfriend," was also at the casino with her parents and went to their home as well. At approximately 5:30 a.m., I.B. announced she was leaving the gathering. Kavo convinced her to give him a ride to the residence he shared with his sister, but upon arriving at the home, the defendant attempted to kiss and fondle I.B. against her will. When she began honking the car horn to draw attention to the situation, Kavo forced himself into the driver's seat and backed the vehicle into the driveway.

Although the presentence report claims that Kavo then "forced" I.B. to get out of the car and enter his house, the defendant denied using any physical force and, according to the government, the victim "d[id] not recall how she got into the [defendant's] home." In any event, Kavo's and I.B.'s entrance into the residence awoke the defendant's sister, who was sleeping in the living room. Once the sister returned to her bed, Kavo closed the door to

that room and began kissing I.B.  I.B., however, "started saying no, she wanted to go home."  At that point, the defendant picked up I.B., carried her downstairs to his basement bedroom, and, against I.B.'s wishes, removed the woman's pants and underwear and digitally penetrated the victim's vagina before she was able to escape and report the assault.

Initially, Kavo told the authorities that the digital penetration was consensual.  Two weeks later, however, "[h]e admitted he was aware the victim did not want to have sexual contact with him, but advised he did not think she would get as upset as she did, based upon his intoxicated state and their past relationship."

At sentencing, the district judge agreed with the probation officer that § 2A3.1 of the 2003 version of the United States Sentencing Guidelines provided the proper framework for the defendant's sentencing calculus.  In accordance with the provisions of that guideline section, the district court began with a base offense level of 27, *see* UNITED STATES SENTENCING GUIDELINES § 2A3.1(a) (2003), then increased by four levels because the crime was committed by force or threat, *see id.* at § 2A3.1(b)(1), and increased by another four levels because "the victim was abducted."  *See id.* at § 2A3.1(b)(5).  After reducing the offense level three levels for Kavo's acceptance of responsibility, the court calculated his offense level at 32, determined that the appropriate sentencing range was 121-151 months, and sentenced Kavo to the lowest end of the range, 121 months.  The defendant now appeals, asserting that the guideline for abduction should not have been applied in this

case and that, therefore, he should have been sentenced as a level-28 offender to a prison term between 78 and 97 months.

## DISCUSSION

Initially, the only issue raised on appeal concerned the propriety of the four-level enhancement of the defendant's criminal offense level, based on the district judge's conclusion that Kavo abducted his victim during the perpetration of the crime. We review such legal conclusions regarding the application of the guidelines de novo. *See United States v. Schray*, 383 F.3d 430, 432 (6th Cir. 2004). Subsequently, the defendant has raised a challenge to the enhancement based on *Booker.* Because this claim was not presented in the district court, it is reviewed here for plain error only, under the well-established four-factor analysis constructed by the Supreme Court in *United States v. Olano*, 507 U.S. 725, 732-37 (1993). *See also Oliver*, 397 F.3d at 375-76.

In determining whether the district court correctly concluded that Kavo abducted I.B. during the commission of the offense, we look first to the language of the guidelines themselves for direction. Application Note 1 of the Commentary to § 2A3.1 explains that the term "abducted," as used in this guideline, is to be given the definition contained "in the Commentary to § 1B1.1 (Application Instructions)." Application Note 1(A) to that Commentary provides in turn that "'[a]bducted' means that a victim was forced to accompany an offender to a different location. For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction." Unfortunately,

however, the guidelines do not offer further assistance in defining exactly what constitutes

a "different location" for purposes of the sentencing scheme.

At the sentencing hearing, the district judge offered his insight into the dilemma by

explaining:

> In the case of *United States v. Whooten*, W-H-O-O-T-E-N, 279 F.3d
> 58, the First Circuit took up the question of whether the forced movement of
> a bank teller at gunpoint to a parking lot was an abduction. The Court began
> the analysis by saying they had no difficulty finding that this was a forced
> movement, quote, "to a different location," end quote, which is required by
> this guideline. The Court then concluded that discussion by saying as
> follows: Quote, "This court has observed that the abduction enhancement
> is intended, at least in part, to protect victims against additional harm that
> may result from the victim's isolation, and thus applies whether the abduction
> is carried out by threat or by physical force, citation deleted. Regardless of
> whether Mee," M-E-E, "was forced at gunpoint to walk 65 feet toward the
> getaway car or the entire 153 to reach the car, Mee faced," quote, "'the same
> dangerous consequences,'" end quote, of isolation. . . . "Because Whooten
> unquestionably placed Mee at risk of harm, which the abduction
> enhancement is designed to deter, we are even more convinced that
> application of the abduction enhancement is appropriate in this case."

> Similarly, in the Ninth Circuit case of *United States v. Mix*, 2003 WL
> 22383528, the defendant was convicted of two counts of kidnaping, five
> counts of aggravated sexual abuse, and two counts of assault with a
> dangerous weapon. The court addressed the abduction enhancement and
> found, quote, "The district court did not err in adjusting Mix's base offense
> level pursuant to USSG Section 2A3.1(b)(5) (abduction), because Mix forced
> his victim at knifepoint into a bathroom to continue the assault, end quote,
> citing *United States v. Jordan*, 256 F.3d 922, another Ninth Circuit decision,
> and *United States v. Whooten*, 279 F.3d 58, the First Circuit decision
> mentioned just a moment ago.

> Looking at the definition in 1B1.1 and these cases, it appears as if the
> enhancement would not be appropriate here based upon any role the

defendant might have played in moving the victim from the car to the house, particularly inasmuch as she has no recollection of how she got in the house.

But in this case, it appears as if the enhancement is appropriately applied, given the defendant having admitted that he picked her up and took her to the basement of this residence. Certainly, a basement of a residence is more isolated. And just as importantly here, where he's moving her down to the basement by force, because his sister was on the first level, one can reasonably assume that the chances of an assault by force increased substantially when they were [in] another location in the house where there was nobody else present. Accordingly, it appears as if the adjustment is appropriately applied in this case, and the objection is denied.

Decisions from other circuits that have addressed issues of whether victims have been forced to "a different location" have endorsed this rationale for the guideline enhancement.[1]  As the district court noted, for example, the First Circuit observed in

---

[1]The Fifth Circuit in *United States v. Hickman*, 151 F.3d 446, 462 (5th Cir. 1998), was able to find "abductions" in circumstances in which the defendant accosted his victims in the parking lots of fast food restaurants and then forced them inside the establishments. Similarly, other cases involving the transportation of the victim from one state to another or from outside a building into the structure provide for a relatively easy determination that an abduction has occurred and that such transportation of the victim has clearly increased the risk of harm to that innocent person. *See*, *e.g.*, *United States v. Brown*, 330 F.3d 1073, 1079 (8th Cir.) (abduction found when truck driver with permission to drive daughter of friends from Kansas to Texas and back took victim against her wishes to campground in Arkansas where he raped her), *cert. denied*, 540 U.S. 975 (2003); *United States v. Kills In Water*, 293 F.3d 432, 437 (8th Cir. 2002) (abduction occurred because victim's ability to escape was greatly impaired when defendant dragged her from outside of an abandoned trailer into the trailer to rape her); *United States v. Taylor*, 128 F.3d 1105, 1110 (7th Cir. 1997) (victim was abducted when she was forced at gunpoint "to go from the parking lot into the bank"); *United States v. Young*, No. 02-2097, 2002 WL 31505522 at *1 (8th Cir. Nov. 12, 2002) (victim was abducted by defendant when defendant, while walking down the road with the victim, pulled her into a friend's empty house and raped her).

When faced with less obvious scenarios, courts have interpreted the term "a different location" "on a case by case basis, considering the particular facts under scrutiny, not mechanically, based on the presence or absence of doorways, lot lines, thresholds, and the like." *Hickman*, 151 F.3d at 462. By doing so, the Fifth Circuit, in *United States v. Hefferon*, 314 F.3d 211 (5th Cir. 2002), concluded that the victim in that case had been abducted even though she had not been forced or tricked to leave the grounds of an Air Force lodging facility. The court did determine, however, that the young girl had indeed been moved to a different location that made her escape less likely when the defendant tricked her into moving from some trees near the playground of the facility to an area close to the trash dumpsters when the victim's siblings approached the trees and thus threatened to interrupt Hefferon's efforts to direct the seven-year-old in the commission of various sexual acts. *See id.* at 215.

*Whooten* that the provision exists "to protect victims against additional harm that may result from the victim's isolation." *Whooten*, 279 F.3d at 61. Similarly, the Eighth Circuit noted that "[a]bduction increases the gravity of sexual assault or other crimes because the perpetrator's ability to isolate the victim increases the likelihood that the victim will be harmed." *United States v. Saknikent*, 30 F.3d 1012, 1013 (8th Cir. 1994).

In this case, because Kavo physically carried I.B., against her wishes, from the main floor of the defendant's home to the defendant's basement bedroom, the district court held that Kavo had abducted his victim within the meaning of the sentencing guidelines and was thus deserving of the four-level enhancement under § 2A3.1(b)(5). We agree with the district court's decision that the movement of the victim increased the likelihood of harm and offered Kavo a better chance to consummate his crime than if he had remained on the main floor of the home in the immediate area where his sister was sleeping and could have been summoned to assist the victim. Legally then, we find no error in the district court's determination that application of guideline was supported by the facts admitted by the defendant as part of his guilty plea.

Because the operative facts were admitted by the defendant and are not, therefore, "judge-made" facts, it could be argued that there is no *Booker* problem in this case because there was no Sixth Amendment violation in connection with the district court's determination that an abduction occurred. However, the opinion of the so-called "Breyer majority" in *Booker* requires a remand for re-sentencing in "all cases on direct review," regardless of

whether they involve a Sixth Amendment violation, if the district court acted under the impression that it was bound to follow the guidelines in sentencing, when the section of the Sentencing Reform Act that made application of the guidelines mandatory has now been held unconstitutional and has been excised from the remainder of the Act. *See Booker*, 125 S. Ct. at 769; *Barnett*, 398 F.3d at 524.

Because, however, Kavo did not challenge his sentence on *Booker* grounds before the district court, we review the district court's sentencing determination only under *Olano*'s plain error standard. *See Booker*, 125 S. Ct. at 769. As the Supreme Court explained in *Johnson v. United States*, 520 U.S. 461, 467 (1997), such review requires us to evaluate whether we can find plain error that affects substantial rights of the defendant and that, in our view, seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings.

The principle is already well-established that the first two prongs of the *Olano* standard are satisfied when the error is evident at the time of appeal. *See United States v. Cotton*, 535 U.S. 625, 632 (2002). The government here does not, and indeed cannot, dispute that district courts, prior to *Booker*, erroneously, as it now appears, viewed guideline calculations as mandatory. Because, at the time of appeal, that viewpoint has clearly been discredited, we must proceed to an analysis of whether Kavo's "substantial rights" have been affected.

Kavo has a right to be sentenced according to a constitutional punishment scheme. Consequently, absolute adherence by the district court to the mandatory sentencing ranges of the guidelines prevents the defendant from receiving a sentence truly commensurate with all aspects of his background and the situation surrounding his commission of the crime. Moreover, for us to determine now that the 121-month prison sentence was reasonable without allowing the district judge the required latitude and discretion "would be tantamount to performing the sentencing function ourselves. . . . That the particular sentence imposed here might be reasonable is not to say that the district court, now vested with broader sentencing discretion, could not have imposed a different sentence that might also have been reasonable." *United States v. Hughes*, ___ F.3d ___, ___ n.14, 2005 WL 628224 at *13 (4th Cir. Mar. 16, 2005). This is *especially* true in situations in which the sentence imposed falls at the bottom of the sentencing range, implying that the district judge might well have been more lenient in the exercise of the court's own discretion.[2]

Finally, to uphold a sentence crafted under a now-altered framework without allowing the district court to exercise its discretion in the matter is not only fundamentally unfair, but serves to undermine the public perception that punishments fit the crime committed and the criminal who committed it. Indeed, "[w]e would be usurping the discretionary power

---

[2]Of course, it does not logically follow that a sentence longer than the minimum guidelines punishment indicates an aversion to a lesser sentence in all instances. For example, a district judge, faced with a then-mandatory 121-151-month sentencing range, might well have sentenced a defendant to 136 months because of a belief that the circumstances surrounding the crime justified a sentence midway in the range deemed applicable by the guidelines. Governed only by his or her discretion, however, that sentencer might well conclude that an appropriate punishment might fall somewhere midway between the statutory minimum sentence of one year and the 121-month sentence originally imposed.

granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*." *Oliver*, 397 F.3d at 380 n.3.


## **CONCLUSION**


For the reasons set out above, we VACATE the district court's sentencing order and REMAND the case for further proceedings consistent with this opinion.