**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 07-4697**

_____

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

         versus

NICODEMUS GLADDEN, a/k/a Nicodemus Rainey,

                                    Defendant - Appellant.

_____

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, District
Judge.  (2:06-cr-00966-PMD)

_____

Submitted:  January 31, 2008      Decided:  February 13, 2008

_____

Before WILKINSON and KING, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Mary Gordon Baker, Assistant Federal Public Defender, Charleston,
South Carolina, for Appellant. Reginald I. Lloyd, United States
Attorney, Alston C. Badger, Assistant United States Attorney,
Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Nicodemus Gladden pleaded guilty to being a felon in possession of a firearm and ammunition. On appeal, he challenges his 120-month sentence, contesting the application by cross reference of the robbery guidelines to his sentence and arguing that his sentence is unreasonable. Finding no error, we affirm.

On June 17, 2006, Charleston City police officer Corporal Chris Costanzo was dispatched to 1328 St. Clair Drive in response to illegal narcotic activity. When Officer Costanzo arrived, he observed Appellant Nicodemus Gladden and another African-American male walk away from a parked Ford Crown Victoria that had a door open and loud music playing from inside the car. Corporal Costanzo asked both men if they knew who owned the vehicle. Both men denied ownership of the car; however, it was later determined the vehicle belonged to Gladden. Corporal Costanzo went to the vehicle to retrieve the keys and noticed a strong odor of marijuana coming from inside the vehicle. He then observed Gladden walking away from him toward the side of a residence. The officer yelled at Gladden to stop, but Gladden ran away from the officer. Costanzo observed Gladden remove a black handgun from his waistband. Gladden disputed that he possessed a gun.

Corporal Costanzo testified that, after he gave Gladden a verbal command to stop, Gladden began to run away with the gun still in his hand. A foot chase ensued, with Costanzo pursuing

- 2 -

Gladden over several fences and through backyards in the neighborhood. Costanzo continued to shout to Gladden not to move, "police," but Gladden continued to run with the gun visible in his hand. Gladden jumped into the back of a pick up truck, which was stopped on a street corner at a stop sign. At that point, Costanzo was approximately fifty to sixty feet behind the truck. Costanzo testified that Gladden yelled to the driver, "go, go, go," with the gun in his hand pointed at the driver. Gladden held the gun down by his hip at a ninety degree angle. There was a rear window between the driver and Gladden and Gladden was approximately one or two feet from the driver. Costanzo observed that the driver "looked back to his left out the window, and when he turned around he looked pretty surprised, his eyes bugging out. And he turned back to the right, then he started to drive off with Mr. Gladden still in the back." (J.A. 37). Corporal Costanzo cut across a yard and approached the truck, still on foot, and, with his own gun drawn, yelled to the driver to stop the vehicle. The driver looked at Costanzo and immediately stopped the vehicle. Gladden jumped out and began to run again. Costanzo estimated that the truck had traveled approximately 200 feet while Gladden was in the truck. The driver of the truck left the scene and Costanzo continued to pursue Gladden on foot. Gladden eventually ran inside a house and the occupant came out screaming that someone just broke into his house. Costanzo called in the address and requested more units to

- 3 -

the scene. He tried to keep Gladden contained in the house. Additional officers arrived and entered the house and apprehended Gladden. Gladden no longer had the gun on his person. A gun was later found by officers behind a shed that Gladden and Costanzo circled several times during pursuit.

The presentence report (PSR) assigned a base offense level of 20 pursuant to U.S. Sentencing Guidelines Manual § 2K2.1 (2006). Gladden received an additional six levels under USSG § 2K2.1(b)(4)(A) (stolen firearm) and USSG § 2K2.1(b)(6) (possessed in connection with another felony offense). However, because Gladden used the firearm in connection with a carjacking, the probation officer applied the cross-reference in USSG § 2K2.1(c)(1)(A) to USSG § 2X1.1(a), which provides for the use of "[t]he base offense level from the guidelines for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." Accordingly, the PSR referenced the guideline for robbery, found in USSG § 2B3.1, and recommended a base offense level of twenty. The PSR added an additional six levels, pursuant to USSG § 2B3.1(b)(2)(B), because the firearm was "otherwise used" by Gladden in the carjacking. Further, the PSR added four levels pursuant to USSG § 2B3.1(b)(4)(A), because the truck driver was abducted to facilitate commission of the offense or to facilitate escape. Finally, the PSR added two levels pursuant to USSG

- 4 -

§ 2B3.1(b)(5), because the offense involved a carjacking. Therefore, the resulting adjusted offense level was 32.

After a three-level reduction for acceptance of responsibility, pursuant to USSG § 3E1.1(a) and (b), the PSR calculated Gladden's total offense level as 29. This, combined with Gladden's criminal history category of VI, resulted in an advisory Guidelines range of 120 to 151 months. However, because the maximum term of imprisonment was ten years, the Guidelines range became 120 months. Gladden moved for a downward variance, and also objected to the cross reference provision in the PSR. The Government agreed with Gladden that the enhancement under USSG § 2B3.1(b)(2) should have been five levels instead of six, thus the recalculated range was 110 to 120 months. The district court upheld the application of the cross reference and its enhancements, denied Gladden's motion for a downward variance, and sentenced Gladden to a 120-month term of imprisonment.

In reviewing a sentencing judge's application of the sentencing guidelines, this court reviews factual determinations for clear error. United States v. Green, 436 F.3d 449, 456 (4th Cir.), cert. denied, 126 S. Ct. 2309 (2006). "If the court's findings may rationally be said to be supported by a preponderance of the evidence, they may not be disturbed on appeal." United States v. Crump, 120 F.3d 462, 468 (4th Cir. 1997).

Gladden argues that the facts are insufficient to justify the additional five levels for brandishing or possessing the firearm because the carjacking incident only lasted seconds. He contends that no one knew if the driver saw the weapon because he was not identified and, without testimony from the victim, the five-level enhancement is not appropriate. Considering the officer's detailed testimony, including that Gladden possessed the gun before and after jumping into the truck, we conclude that the district court did not clearly err in concluding that Gladden possessed or brandished the gun in connection with the carjacking.

Next, Gladden argues that the district court erred in finding that he abducted the driver to facilitate the carjacking or escape. The district court's determination that Gladden abducted the victim should be reviewed de novo because it involves a legal interpretation of the guideline. See United States v. Kinter, 235 F.3d 192, 195 (4th Cir. 2000) (citing United States v. Nale, 101 F.3d 1000, 1003 (4th Cir. 1996)).

The term "abducted" is defined in Application Note 1(A) to USSG § 1B1.1 as meaning "that a victim was forced to accompany an offender to a different location." The example given is that of a bank robber forcing a teller into a getaway car. Gladden argues that, because he and the victim only traveled approximately 200 feet, he did not force the driver to go to a different location and the event did not even constitute a temporary abduction. See Nale,

101 F.3d at 1003 (temporary abduction can be sufficient for purposes of § 2B3.1(b)(4)(A)). There are several cases from other circuits in which a defendant was held to have abducted the victim by forcing the victim to move (1) forty to fifty feet across a parking lot, United States v. Hawkins, 87 F.3d 722, 728 (5th Cir. 1996); (2) out of a store and into the parking lot sixty-five feet from the store's entrance, United States v. Whooten, 279 F.3d 58, 60-61 (1st Cir. 2002); and (3) from the parking lot of a bank into the main vault, United States v. Taylor, 128 F.3d 1105, 1110-11 (7th Cir. 1997). "[T]he abduction adjustment requires only that force necessary to overcome the particular victim's will." United States v. Saknikent, 30 F.3d 1012, 1014 (8th Cir. 1994). Here, Gladden ordered the driver to "go, go, go," held a gun in his view, pointing it at him, and the officer testified that the driver appeared to be alarmed. Finally, the truck moved approximately 200 feet. We therefore conclude that the district court did not err in finding that the driver of the truck was abducted for purposes of USSG § 2B3.1(b)(4)(A).

Gladden also challenges the two level enhancement under USSG § 2B3.1(b)(5) for carjacking. "'Carjacking' means the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation." USSG § 2B3.1, comment.(n.1). Gladden's sole objection to the enhancement is that it should not have been applied when the driver

of the truck did not testify. There is no requirement for the victim's testimony and, for the reasons discussed above related to the sufficiency of the officer's testimony regarding abduction, the district court did not err in imposing the enhancement.

Finally, Gladden argues that, because the facts underlying the applicable sentencing enhancements were marginal and based only upon the testimony of Corporal Costanzo, his sentence is unreasonable. This court will affirm a sentence if it "is within the statutorily prescribed range and is reasonable." United States v. Moreland, 437 F.3d 424, 432 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006). A sentence that falls within the properly calculated advisory guidelines range is entitled to a presumption of reasonableness. United States v. Johnson, 445 F.3d 339, 341 (4th Cir. 2006); see Rita v. United States, 127 S. Ct. 2456, 2462-69 (2007) (upholding application of presumption of reasonableness to within-guidelines sentence). Because Gladden was sentenced within the properly calculated guidelines range, his sentence is presumptively reasonable. This court reviews his sentence under a deferential abuse of discretion standard. See Gall v. United States, 128 S. Ct. 586, 597 (2007). After reviewing the record, we conclude the district court did not abuse its discretion.

We therefore affirm Gladden's sentence. We dispense with oral argument because the facts and legal contentions are

adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED