AMBRO, Circuit Judge,
dissenting.
Under the Sentencing Guidelines, an abduction occurs when “a victim was forced to accompany an offender to a different location.” U.S.S.G. § 1B1.1, comment. (n.l(A)). To illustrate this, commentary for the Guidelines states that “forcing a bank teller from the bank into a getaway car would constitute an abduction.” Id. The Guidelines’ example of forcibly taking someone from inside a bank to a getaway car outside the building stands in stark contrast to the case before us, where the bathroom and the cash register are separated by a distance of only 34 feet within an 803-square-foot pizza shop.
*293 The analysis of what qualifies as an abduction, and what does not, is subtle and nuanced. Reasonable people can differ, and the side of the line I land is different than my colleagues. For the reasons given below, I respectfully dissent.
The beginning point for my colleagues is that the term “location” “is broad enough to encompass different points of reference within the constructs of a single building or geographic site.” Maj. Op. at 290. I agree. For example, shopping malls, office buildings, and apartment complexes may be single structures, but no one would dispute that they have different points of reference within them (various retail stores, different companies’ offices, and individual apartments), and hence have different locations.
However, as the majority opinion notes, “the smaller the space, the more difficult it is to find a change in location.” Id. at 290. I also agree. But here my perspective parts with my colleagues. To me, if the building or geographic site is small enough, and/or the distance traveled is short enough, there is only one point of reference, and, in turn, only one location. While their contention that even “the smallest of areas still may contain different locations[,]” id., is plausible in theory, in many situations involving a single small building or geographic site, and/or when only a short distance is traveled, it strains logic.
Such is the case with Ed’s Pizza House. It is so small — 803 square feet by my estimation of the 56' by 14'4" shop — that I believe it is only one point of reference and thus only one location. Many offices of senior persons in organizations are at least as big.
If a customer were standing near the bathroom door of Ed’s Pizza House and asked where he was located, he would say he was at Ed’s Pizza House. If this same customer were then to walk to the cash register (34 feet away from the bathroom door) and again asked where he was located, I have no doubt that he still would say he was at Ed’s Pizza House. The short distance traveled within the same small shop leads me to conclude that there was not movement to a different location.
Contrast this with the example of a mall shopper who travels 34 feet across a walkway, leaving Store A and entering Store B. While the distance traveled is the same as that in this case, the points of reference are undoubtedly different in the shopping mall example. The shopper would first say he was at Store A and then say he was at Store B. As such, the mall shopper did, in fact, move to a different location in the example. The same can be said for the apartment resident who walks across the hallway, leaving Apartment 1A and entering Apartment IB. While the distance traveled is short (likely even less than 34 feet), his location certainly changed from one apartment to the other.
Consider also the example of a farmer in his cornfield. He could walk hundreds of yards, but, because each position in his cornfield is amorphous, his location does not change. He still is in his cornfield no matter where he is located.
Thus, while I agree with the majority that a “highly flexible approach,” id., should be employed when analyzing the “different location” issue, these examples underscore the principle that, when only one building or geographic site is involved (especially a small building or site), and/or when only a short distance is traveled, there is a greater need for the crossing of some line of demarcation — a doorway, lot line, threshold, etc. — to find that there was movement to a different location. To hold otherwise would “virtually ensure” that any movement at all would result in an *294 abduction enhancement. See United States v. Eubanks, 598 F.3d 645, 654 (7th Cir.2010) (holding, among other things, that abduction enhancement was inappropriate where an armed robber forced a store employee to the back room to retrieve a surveillance video).
I readily acknowledge that, even when only one building or geographic site is involved and/or when the distance traveled is not great, the abduction enhancement rightly can be applied to a defendant who forcibly moves a victim in a manner and/or for a reason that the abduction enhancement was specifically designed to prevent, such as when the defendant isolated the victim, used the victim as a hostage or human shield, or forced the victim to" accompany him during his getaway. See United States v. Osborne, 514 F.3d 377, 390-91 (4th Cir.2008) (holding that abduction enhancement was applicable where defendant forced Walgreens employees at knifepoint from the pharmacy section, located in the back of the store, to the front door of the building; relying heavily on fact that the defendant forced the victims to accompany him so he could “keep[] [the] victims close by as readily accessible hostages”); United States v. Whooten, 279 F.3d 58, 61 (1st Cir.2002) (observing that “the abduction enhancement is intended, at least in part, to protect victims against additional harm that may result from the victim’s isolation”); United States v. Hawkins, 87 F.3d 722, 728 (5th Cir.1996) (per curiam) (holding that abduction enhancement was applicable where victims were dragged and forced at gunpoint from a pickup truck to a van that was 40-50 feet away within the same parking lot largely because the movement “was made in connection with a getaway”). In such a situation, the aggravated nature of the defendant’s forcible movement of the victim likely tips the scale in favor of finding that there was movement to a different location despite there having been only one building or site involved and/or a short distance traveled.
Absent an aggravating circumstance, however, there is little to support the finding of a different location when only one small building or site is involved, and/or when only a short distance is traveled, and there is no line of demarcation. This is because “transporting victims from one room to another is simply not enough for abduction” absent an aggravating circumstance (such as those described above) that is “ ‘plainly targeted by the abduction enhancement.’ ” Eubanks, 593 F.3d at 653-54 (quoting Osborne, 514 F.3d at 390). “To find otherwise would virtually ensure that any movement of a victim from one room to another within the same building, without any other aggravating circumstances, would result in an abduction enhancement.” Id. at 654. Application of the abduction enhancement thus would be inappropriate in such a situation.
There is no aggravating circumstance here. Quintrell Reynos did not isolate one victim from the rest, he did not use any of them as a hostage, nor did he force any of them to accompany him in his getaway. In fact, after Reynos obtained the money from the cash register and from Juan Gutierrez’s person, Reynos left the pizza shop through its back door while Gutierrez and the two other employees went out the front door. It is difficult for me to see how the abduction enhancement is appropriate when the supposed abductor and his abductees left the building separately and through different doors.
It is true that Reynos forcibly moved the pizza shop employees from the bathroom to the cash register in order to facilitate the commission of a crime — the robbery. However, this alone is insufficient to subject Reynos to the abduction en *295 hancement. To put into play that enhancement, whether for an escape or to facilitate a crime, there must be more than one location involved. As explained above, I believe here only one location was involved, as all of the movement occurred within a single, and small, building and only a short distance was traveled.
Accordingly, because I believe that the bathroom and cash register within the small pizza shop are not different locations, and because no aggravating circumstance exists, I would hold that the abduction enhancement does not apply to this case.
While I believe that the four-level abduction enhancement under § 2B3.1(b)(4)(A) should not be applied to Reynos’ sentence, I am skeptical that his term of imprisonment would be shorter in this case. Reynos’ conduct appears clearly to warrant the two-level physical restraint enhancement under § 2BB.1(b)(4)(B), and that enhancement certainly would have been applied to his sentence had the District Court not applied the abduction enhancement. As noted below, the mere two-level decrease in total offense level would have reduced the sentence range by only seven to nine months, with the low end of the sentence range for the higher offense level overlapping with the high end of the sentence range for the lower offense level. The sentencing judge thus could have imposed the exact term of imprisonment on Reynos had the restraint enhancement been applied instead of the abduction enhancement.
Section 2B3.1(b)(4)(B) of the Sentencing Guidelines provides for a two-level increase “if any person was physically restrained to facilitate commission of the offense.” U.S.S.G. § 2B3.1(b)(4)(B). “Physically restrained” means “the forcible restraint of the victim such as by being tied, bound or locked up.” U.S.S.G. § 1B1.1, comment. (n.l(K)). The qualifying phrase “such as” in this definition indicates that the words “tied, bound, or locked up” are listed by way of example rather than limitation. United States v. Carter, 410 F.3d 942, 954 (7th Cir.2005). Accordingly, physical restraint “is not limited to the examples listed in the guidelines.” United States v. Copenhaver, 185 F.3d 178, 180 (3d Cir.1999). Moreover, “[floree is not limited to physical force, but may also encompass the operation of circumstances that permit no alternative to compliance.” Carter, 410 F.3d at 954 (citation and internal quotation marks omitted).
In our case, Gutierrez and his two coworkers had no alternative but to comply with Reynos’ demands. See id. (holding that restraint enhancement was applicable where the defendant forced a bank teller at gunpoint from the bank vault to her cash drawer against her will, explaining that, “with [the defendant’s] gun pointed at her from only inches away, [the bank teller] had no alternative but to comply with his instructions to move”). Reynos’ conduct “was thus more culpable than a robber who does not forcibly restrain a victim to facilitate his offense.” Id. As such, I believe that the two-level physical restraint sentence enhancement would be appropriate.
Consequently, it appears that the District Court still could have sentenced Reynos to 157 months’ imprisonment. He was subject to a mandatory consecutive 10-year prison sentence under 18 U.S.C. § 924(c) for discharging a firearm during the robbery (he fired his handgun several times in an effort to break the lock on the back door of the pizza shop while attempting to flee). In addition, there is a base offense level of 20 for robbery under 18 U.S.C. § 1951. U.S.S.G. § 2B3.1. Applying the two-level restraint enhancement *296 would mean an offense level of 22 (as opposed to 24 if the four-level abduction enhancement were used). With a three-level stipulated downward adjustment for acceptance of responsibility, the total offense level becomes 19 (as opposed to 21 if the abduction enhancement were applied). Even using Criminal History Category I (the lowest category), the Guidelines’ range for imprisonment for an offense level of 19 is 30 to 37 months, while the range is 37 to 46 months for offense level 21. When this term is added to the 10-year mandatory consecutive prison sentence, the range for Reynos’ sentence was 150 to 157 months’ imprisonment. Thus, Reynos still could have been sentenced to 157 months’ imprisonment even using the restraint enhancement instead of the abduction enhancement.
ífc í}í # ‡
With this context, I respectfully dissent but doubt that the net effect, even were my lack-of-abduction view to prevail, results in a reduction in sentence.