**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10044 |
| *Plaintiff-Appellee*, | D.C. No. 4:19-cr-02615-CKJ-DTF-1 |
| v. | |
| JOSHUA WILLIAM SCHEU, | |
| *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted February 7, 2023
Phoenix, Arizona

Filed August 2, 2023

Before:  Michael Daly Hawkins, Susan P. Graber, and
Morgan Christen, Circuit Judges.

Opinion by Judge Hawkins

## SUMMARY[*]

## Criminal Law

The panel affirmed a sentence for two counts of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c), 2246(2), & 1152, in a case in which the district court applied a four-level enhancement under U.S.S.G. § 2A3.1(b)(5) because "the victim was abducted."

The panel wrote that whether it evaluates the plain meaning of the term "abducted" as it appears in the Guideline itself, or considers "abducted" to be ambiguous and looks to the definition in the Guidelines' commentary, U.S.S.G. § 1B1.1, cmt. n.1(A) (2004), it would reach the same conclusion: the victim was "abducted" when the defendant forced her from the roadside where he encountered her into a nearby cornfield to perpetrate the sexual assault.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# COUNSEL

J. Ryan Moore (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Federal Public Defender's Office for the District of Arizona; Tucson, Arizona; for Defendant-Appellant.

Shelley K.G. Clemens (argued) and Corey J. Mantei, Assistant United States Attorneys; Christina M. Cabanillas, Deputy Appellate Chief; Gary M. Restaino, United States Attorney, District of Arizona; Office of the United States Attorney; Tucson, Arizona; for Plaintiff-Appellee.

# OPINION

HAWKINS, Circuit Judge:

Defendant Joshua William Scheu appeals his sentence following a guilty plea to two counts of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c), 2246(2) & 1152. He contends that the district court misapplied a sentencing enhancement for abduction and thus improperly added four levels to his sentencing range. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

In October 2019, Scheu was indicted on two counts of aggravated sexual abuse of a child for sexual acts of violence committed against a fourteen-year-old Native American girl on the Gila River Indian Community outside of Phoenix, Arizona, in November 2004. Scheu pled guilty without the benefit of a plea agreement.

The Presentence Investigation Report calculated the sentence using the 2004 version of the Guidelines, applied a downward adjustment for acceptance of responsibility, and added a four-level enhancement because "the victim was abducted." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 2A3.1(b)(5). This enhancement increased both ends of the advisory sentencing range by more than six years. Scheu objected, arguing that the abduction enhancement should not be applied because there was no significant change in location during or prior to the assault.

At the sentencing hearing, the government presented the testimony of a former Gila River Police Department detective who had investigated the case in 2004.[1] The detective testified that the victim and victim's mother said that the victim had been waiting by a dirt berm and water pumping station along 83rd Avenue when the defendant drove by, made a U-turn, parked, and got out of his vehicle. As he approached the victim, she began walking backwards, but Scheu caught up to her, grabbed her arms, and put his hand over her mouth. He then pushed, pulled, dragged and/or moved her approximately 35 to 40 feet into the corner of a nearby cornfield where the sexual assault occurred, and ordered her to lie down and not to scream or cry. The field was adjacent to the road, and the corn was approximately two-and-a-half feet high at the time. Several photographs and a hand-drawn diagram of the crime scene were admitted in evidence.

Overruling Scheu's objection to the enhancement, the district court concluded that the forced movement of the victim from the roadside into the cornfield was sufficient to

---

[1] The victim died of natural causes in 2020 and was not available to testify at Scheu's sentencing hearing.

support the abduction enhancement and noted that the defendant had "physically forced the victim into a cornfield to conceal the assault from public view or detection." The court sentenced Scheu to 210 months of imprisonment and lifetime supervised release.

## STANDARD OF REVIEW

We review de novo the district court's legal interpretation of the Guidelines. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1171 (9th Cir. 2017) (en banc). A court's application of the Guidelines to the facts of a case is reviewed for an abuse of discretion and its factual findings for clear error. *Id*. at 1170.

## DISCUSSION

The Sentencing Guideline at issue, U.S.S.G. § 2A3.1(b)(5) (2004), provides:

Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse:

 a. Base Offense Level: 30
 b. Specific Offense Characteristics
 . . . .
 (5) If the victim was abducted, increase by 4
   levels.

The application note to this Guideline further provides that the term "abducted" in subsection (b)(5) shall "have the meaning given those terms in Application Note 1 of the Commentary to § 1B1.1." In turn, the commentary to § 1B1.1 explains:

> "Abducted" means that a victim was forced
> to accompany an offender to a different

location.  For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction.

U.S.S.G. § 1B1.1, cmt. n.1(A) (2004).

Applying the definition in the commentary, the district court found the defendant had forcibly moved the victim from the shoulder of the road into an adjoining cornfield, where he shoved her onto the ground, approximately 35 to 40 feet from the spot where he had initially grabbed her by the open road.  The district court ruled that this movement was sufficient to demonstrate by clear and convincing evidence that Scheu had forced the victim to accompany him to a different location and applied the four-level enhancement.

## I.

For many years, the leading case on how courts should treat definitions, examples, and other information in the Guideline commentary has been *Stinson v. United States*, 508 U.S. 36 (1993).  *Stinson* concluded that the Sentencing Commission's commentary in the Guidelines manual that interprets or explains a Guideline is binding and that courts must follow it unless it is plainly erroneous, inconsistent with the Guideline provision itself, or violates the Constitution.  *Id*. at 47.  In reaching this conclusion, the Court considered various analogies to other legal areas and ultimately concluded that, although "not precise," the Guideline commentary was much like an agency's interpretation of its own legislative rule (and not like an agency's construction of a federal statute that it administers).  *Id.* at 43–45.

Twenty-six years after *Stinson*, the Supreme Court decided *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), which addressed the proper deference to an agency's interpretation of its regulations (in that case, the Board of Veterans' Appeals interpretation of an agency rule in a particular decision). *Kisor* reaffirmed the existence of, but limited the scope of, "*Auer / Seminole Rock* deference"; the Court explained that "the possibility of deference can arise only if a regulation is genuinely ambiguous" and a court has exhausted all the "traditional tools of construction." *Id.* at 2414–15 (citation omitted); *see Auer v. Robbins*, 519 U.S. 452 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945).

Since *Kisor* was decided, a circuit split has arisen over whether this more limited deference should apply to the Sentencing Guidelines commentary and application notes. *Compare United States v. Moses*, 23 F.4th 347, 351–58 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 640 (Jan. 9, 2023) (setting forth reasons why *Kisor* did not apply to the Guidelines, and continuing to apply *Stinson*), *with United States v. Riccardi*, 989 F.3d 476, 484–85 (6th Cir. 2021) (applying *Kisor* to the Guidelines and concluding that a court may defer to commentary only if Guideline is ambiguous).

Our court recently weighed in on the debate and agreed that the "more demanding deference standard articulated in *Kisor* applies to the Guidelines' commentary." *United States v. Castillo*, 69 F.4th 648, 655 (9th Cir. 2023). As we explained:

> *Kisor* directly examined and narrowed *Seminole Rock* and *Auer* deference in the context of an administrative agency's interpretation of its own regulation, noting

that such deference is not permitted without first finding the regulation ambiguous. *Stinson* deference is directly grounded in *Seminole Rock* and *Auer* deference. . . . Therefore, to follow *Stinson's* instruction to treat the commentary like an agency's interpretation of its own rule, we must apply *Kisor's* clarification of *Auer* deference to *Stinson*.

*Id.* at 655–56 (internal quotations and citations omitted).

In any event, the result in this case is unaffected by this change in analysis. As discussed below, we would reach the same conclusion in this case whether we evaluate the plain meaning of the term "abducted" as it appears in the Guideline itself, or whether we consider "abducted" to be ambiguous and look to the commentary's definition.

## II.

We apply "the traditional rules of statutory construction when interpreting the sentencing guidelines." *United States v. Flores*, 729 F.3d 910, 914 n.2 (9th Cir. 2013). "Our interpretation will most often begin and end with the text and structure of the guidelines provisions themselves." *United States v. Cuevas-Lopez*, 934 F.3d 1056, 1061 (9th Cir. 2019) (citation and internal quotation marks omitted).

Here, the Guideline itself simply provides that "[i]f the victim was abducted, increase by 4 levels." U.S.S.G. § 2A3.1(b)(5). The word "abduct" derives from the Latin "'abduco' to lead away." *Humphrey v. Pope*, 54 P. 847, 848 (Cal 1898). Contemporary dictionary definitions define "abduct" as "to seize and take away (a person) by force,"

*Merriam Webster Online* (2023), https://www.merriam-webster.com/dictionary/abduct [https://perma.cc/32EU-LC8Y], "to carry off by force," *The American Heritage Dictionary* (2d Coll. Ed. 1991), and "[t]o take (a person) away by force or deception," *The Oxford English Dictionary Online* (2023), https://www.oed.com/view/Entry/212 [https://perma.cc/KJ3L-Z3KX]. *Black's Law Dictionary* similarly defines abduct(ion) as "[t]he act of leading someone away by force or fraudulent persuasion." (9th Ed. 2009). Scheu argues that "abducted" requires a "substantial leading away" and is "akin to protracted custody, captivity, or significant isolation."

The plain meaning of "abducted" is not difficult to discern, and the facts of this case would constitute an abduction under any of these definitions. The defendant encountered, chased, and caught the victim by the side of the open road, and then forced her to accompany him 35 to 40 feet into a nearby cornfield, where the corn was approximately two-and-a-half feet high; he then pushed her down onto the ground so they could not be seen by passing vehicles, ordered her not to scream or cry so no one would come to her aid, and raped her. It can easily be said that the defendant seized the victim and led her away by force, significantly isolating her and holding her in his custody and captivity while he perpetrated the crime.

We note that this interpretation is also consistent with the structure and use of "abducted" as an enhancement in other Guidelines provisions, such as U.S.S.G. § 2B3.1 (robbery) and § 2B3.2 (extortion by force or threat). In these Guidelines, there is lesser, two-level enhancement if the victim was "physically restrained" and a separate, four-level enhancement if the victim was abducted. Unlike abduction, physical restraint does not require any movement of the

victim and applies if the victim is simply restrained in place. *See, e.g., United States v. Thompson*, 109 F.3d 639, 641 (9th Cir. 1997) (noting examples such as being tied, bound, or locked up). Applying the abduction enhancement in this case is also completely consistent with the underlying purpose of the enhancement in the sexual assault guideline.  As the Eighth Circuit has noted:  "Abduction increases the gravity of sexual assault or other crimes because the perpetrator's ability to isolate the victim increases the likelihood that the victim will be harmed."  *United States v. Saknikent,* 30 F.3d 1012, 1013 (8th Cir. 1994).

Employing these "traditional tools of construction," *Kisor*, 139 S. Ct. at 2415 (citation and internal quotation marks omitted), we conclude that the text of § 2A3.1(b)(5) is not ambiguous and that the district court correctly applied the abduction enhancement in this case.

## III.

Because § 2A3.1(b)(5) is not ambiguous, "we are not permitted under *Kisor* to defer to the Commission's commentary."  *Castillo*, 69 F.4th at 658.  However, we recognize that the commentary reflects the Commission's "experience and informed judgment," and we may weigh it according to its "power to persuade."  *Hernandez v. Garland*, 38 F.4th 785, 789, 792 (9th Cir. 2022) (first quoting *Orellana v. Barr*, 967 F.3d 927, 934 (9th Cir. 2020); and then quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  The commentary defines "abducted" as "forced to accompany an offender to a different location."  U.S.S.G. § 1B1.1, cmt. n.1(A) (2004); *see United States v. Jordan*, 256 F.3d 922, 933 (9th Cir. 2001) (interpreting U.S.S.G. § 2B3.1(b)(4) and applying this definition of "abducted"). This commentary provision does not conflict with or

impermissibly expand the text of U.S.S.G. § 2A3.1(b)(5) but seeks to clarify the meaning of the term as used in this (and several other) Guidelines. The relevant commentary to §§ 2A3.1(b)(5) & 1B1.1 is particularly authoritative because it has remained substantively unchanged since the initial Sentencing Guidelines were adopted in 1987, and those Guidelines went through public notice-and-comment. [2]

This circuit has not yet had an occasion to consider what constitutes a "different location" when applying this commentary definition to the sexual assault Guideline. Although Scheu argues for an interpretation that requires a "substantial change in place" and argues that the approximately 35 to 40 feet of movement here was insufficient, there is no requirement of "substantial" movement in the Guideline or the commentary's definition, and we will not read requirements into a Guideline that do not appear in its text. *See Whitfield v. United States*, 574 U.S. 265, 269 (2015); *United States v. Gonzalez*, 262 F.3d 867, 870 (9th Cir. 2001) (per curiam) (declining to read a

---

[2] *See* Sentencing Guidelines for U.S. Courts, 52 Fed. Reg. 44,674, 44,681, 44,685 (Nov. 20, 1987); U.S.S.G. § 2A3.1(b)(5) & app. n.1 (1987); *id.* § 1B1.1, cmt. n.1(a) (1987); *see also Kisor*, 139 S. Ct. at 2416 ("[W]e have deferred to 'official staff memoranda' that were 'published in the Federal Register . . . .'" (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566 n.9, 567 n.10 (1980))); *Skidmore*, 323 U.S. at 140 (explaining that the weight we may accord to agency guidance "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."); *see generally United States v. Dupree*, 57 F.4th 1269, 1280 (11th Cir. 2023) (en banc) (Pryor, J., concurring) (explaining that "Guidelines commentary ordinarily goes through the same notice-and-comment and congressional review procedures as substantive guidelines revisions").

scienter requirement into a Guideline "because the plain language of the guideline does not require" knowledge).

Numerous other circuits have examined this aspect of the commentary's definition in a variety of fact patterns; in reviewing them, it becomes apparent that it is the *qualitative* change in location that is of more significance than the distance traveled. Thus, for example, moving from indoors to outdoors (or vice versa) has been considered a "different location," even if only a few feet have been traversed. *See United States v. Whooten*, 279 F.3d 58, 61 (1st Cir. 2002) (defendant forced bank employee approximately 65 feet from building into parking lot, but not all the way to getaway vehicle); *United States v. Davis*, 48 F.3d 277, 278–79 (7th Cir. 1993) (defendant forced employee from parking lot into credit union); *United States v. Kills in Water*, 293 F.3d 432, 434 (8th Cir. 2002) (defendant "picked up," "dragged," and "lifted" victim inside abandoned trailer after she willingly accompanied him to the trailer's vicinity).

But the definition has not been applied "mechanically based on the presence or absence of doorways, lot lines, thresholds, and the like," and thus movement at gunpoint 40 to 50 feet between vehicles in the same parking lot has also been held sufficient to support the enhancement, even though no technical property line was crossed. *United States v. Hawkins*, 87 F.3d 722, 728 (5th Cir. 1996) (per curiam).[3] As that court explained:

> The victims were accosted at one "location,"
> near the pickup truck, then were dragged and

---

[3] We note there does appear to be tension among the circuits as to whether movement of a victim *within* a single building can constitute a "different location" within the meaning of the commentary's

forced at gunpoint some 40 to 50 feet to another "location," at the van. We are satisfied that it would be unduly legalistic, even punctilious, of us to say that those were not separate "locations" for purposes of the guidelines' definition of "abduction," or that something as coincidental and insignificant as a lot line or doorway could make or break the determination of "different location." The district court did not commit reversible error in concluding, under the instant set of facts, that an abduction occurred.

*Id.*

In *United States v. Hefferon*, the Fifth Circuit confronted a factual scenario somewhat similar to what we confront today. 314 F.3d 211, 215 (5th Cir. 2002). The defendant encountered the seven-year-old victim in an outdoor area on an Air Force base's temporary lodging facility. *Id.* He initially sexually assaulted her near some trees by a playground; when her brother and sister approached, he moved with the victim to an area behind some garbage dumpsters and continued the assault. The court concluded that this move was sufficient to constitute a "different

---

definition. *Compare, e.g., United States v. Wells*, 38 F.4th 1246, 1262, 1264 (11th Cir. 2022) (holding that forcibly dragging a victim from the precipice of the front door as she was leaving the house into a back bedroom where sexual assault occurred constituted more than "trivial movement") *with United States v. Hill*, 963 F.3d 528, 530–31 (6th Cir. 2020) (concluding that forcing customers from a cell phone store sales floor into a back room is not movement to a "different location" from the store itself). As we are not confronted with a situation involving movement within a building, we express no opinion on the reasoning in these cases.

location" even though the trees and garbage repository were both located on the lodging facility's property. *Id.* at 225. Although the court did not estimate the distance between the two areas, it appears that the trees and dumpsters were relatively close together, but the dumpsters were more isolated and allowed the defendant to hide the victim from the view of her family. *Id.* at 215.

So too here, the cornfield was a qualitatively different location than the (much more visible) side of the road, and the defendant forced the victim to accompany him to this location. The commentary's definition of "abducted" thus confirms that the district court properly applied the enhancement.

## CONCLUSION

Whether we look only at the text of § 2A3.1(b)(5) or consult the definition of "abduct" provided in the Guidelines' commentary, § 1B1.1, cmt. n.1(A), we have no difficulty concluding that the victim in this case was indeed "abducted" when the defendant forced her from the roadside where he encountered her into a nearby cornfield to perpetrate the sexual assault. The district court did not abuse its discretion by applying the four-level enhancement.

**AFFIRMED.**